UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-12166-RWZ

GEORGE NARDI

v.

PETER PEPE

ORDER

February 8, 2011

ZOBEL, D.J.

    Petitioner George Nardi was convicted by a jury of the first degree murder of his mother, Dianne Barchard, and sentenced to life in prison. The Supreme Judicial Court of Massachusetts ("SJC") affirmed his conviction. Commonwealth v. Nardi, 893 N.E.2d 1221 (Mass. 2008). He now petitions for a writ of habeas corpus pursuant to 28 U.S.C § 2254. He raises two grounds for relief: (1) his Sixth Amendment right of confrontation, as defined in Crawford v. Washington, 541 U.S. 36 (2004), was violated when a testifying medical expert gave an opinion premised, in part, on testimonial hearsay; (2) his Sixth Amendment right of confrontation was violated when findings in an autopsy report were disclosed to the jury because the expert who conducted the autopsy and drafted the report did not testify.[1]

---

[1] Nardi's petition groups the issues differently, as (1) his constitutional claims and (2) the error committed by the SJC.

**I.     Background**

Nardi, then 37, lived with Barchard, aged 59, in an apartment in Bridgewater, Massachusetts, during the fall of 2002.[2] He had lived with his mother for all but one year of his life. (Supplemental Answer ("S.A.") 1090, Docket # 12.) Barchard worked full time at a local Dunkin' Donuts while Nardi worked only intermittently at odd jobs. The two often argued. Barchard pressured Nardi to find a job and he responded with vulgar insults.

On December 15, 2002, a friend of Barchard saw her walking her dog. It was the last time anyone other than Nardi saw her alive. Barchard's other son, Stephen Souza, and her friends called her home many times during the Christmas holiday period. Nardi answered the phone and provided various excuses for her absence. Eventually, one of her friends contacted the police and reported Barchard as a missing person.

The police cross-checked Barchard's reported address and located a default warrant for Nardi's arrest relating to a DUI charge. They proceeded to the apartment and arrested Nardi outside on a stairwell. He consented to a search of the apartment. Inside, the officers observed a locked door with a flannel shirt stuffed underneath. They forced the door open and found Barchard's decomposing body. Forensic examination discovered bloodstains matching Barchard's DNA near the washing machine.

---

[2]The facts that follow are those set forth in the SJC opinion, except where noted with citation to the record.

Dr. Weiner, then a medical examiner for the Commonwealth, conducted an autopsy of Barchard. He identified bruising on the face which was consistent with strangulation by means of a hand pressed over the mouth and nose. He also noted signs of mild heart disease.

Massachusetts charged Nardi with murder. The critical issue at trial was the cause of death. Nardi claimed that he discovered his mother, dead and in a pool of blood, next to the washing machine. He panicked, pulled her into an adjoining room, and sealed the door. He theorized, based on the physical evidence of heart disease along with other circumstantial evidence, that his mother suffered a fatal heart attack while standing near the washing machine, and the blood at the scene was from an injury she sustained when she collapsed. He had a document which suggested Dr. Weiner did not discover the facial bruising until he made exploratory facial incisions on the second day of the two-day autopsy, a fact which, if true, might call into question the existence of the bruises.

Dr. Weiner did not, however, testify at Nardi's 2006 murder trial. The doctor had retired and moved to Florida and, due to illness, was unable to return to Massachusetts and take the witness stand. The Commonwealth instead called Dr. Edward McDonough, the deputy chief medical examiner of Connecticut, to give an expert opinion as to the cause of death.

Dr. McDonough's opinion was based principally, but not exclusively, on materials contained in the autopsy file, including the report. The autopsy report was not offered into evidence and Nardi had no opportunity to cross-examine Dr. Weiner

3

about the existence of the bruises or any other finding in the autopsy report. (S.A. 859-68; 1076-87 (bench conferences concerning potential testimony and the admission of a document that Nardi believed might call into question Dr. Weiner's identification of bruises).) The prosecution's evidence and the testimony of Dr. McDonough proved persuasive; the jury returned a guilty verdict after three and a half hours of deliberation.

## II. Analysis

This court reviews petitioner's conviction under a highly deferential standard: the application for a writ of habeas corpus will not be granted unless the state court adjudication of his constitutional claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.[3] 28 U.S.C. § 2254. A state court decision is contrary to clearly established Supreme Court precedent if it applies a rule that contradicts the law set forth by the Court or confronts a set of facts materially indistinguishable from a decision of the Court but reaches a different result, and it is an unreasonable application if the precedent is applied to the facts in an objectively unreasonable manner. Brown v. Payton, 544 U.S. 133, 141 (2005).

### A. The Testifying Medical Examiner

---

[3]Nardi argues that his two arguments for habeas relief are subject to de novo review because the SJC decision considered only state law and failed to address his constitutional claims (Pet'rs Resp. 2-3, Docket # 14), but the SJC specifically cited Crawford and explained that "when the question involves the relationship between the hearsay rule and its exceptions, on the one hand, and the right to confrontation, on the other hand" the Commonwealth constitutional protections are "coextensive with the guarantees of the Sixth Amendment." Nardi, 893 N.E.2d at 1229 n.10.

Petitioner argues that the superior court violated his Sixth Amendment right of confrontation, post Crawford, when it permitted Dr. McDonough to give expert opinion testimony as to the cause of death, because the foundation for that opinion was the autopsy report by the absent Dr. Weiner. Crawford held that testimonial evidence, which Nardi asserts includes the autopsy report, cannot be admitted without an opportunity for cross-examination. Crawford, 541 U.S. at 68.

Whatever the merits of plaintiff's interpretation of Crawford to bar expert testimony when the foundation for that testimony is, at least in part, inadmissible, that interpretation is far from clearly established law as determined by the Supreme Court. To the contrary, courts have continued to allow expert testimony post-Crawford where the foundation for the expert opinion is, in part, testimonial hearsay within the scope of the Confrontation Clause. See, e.g., U.S. v. Pablo, 625 F.3d 1285, 1291-92 (10th Cir. 2010).

While it would, perhaps, be a clear violation of Crawford if an expert simply parroted inadmissible hearsay, see Pablo, 625 F.3d 1285, 1292-93 (citing cases), that was not what Dr. McDonough's did. He testified as to his own opinion, premised on the findings in the autopsy report and his own independent review of pictures taken during the autopsy and at the scene of the crime, with a lengthy exposition of his reasoning (see S.A. 818-24, 834-36, 843-49, 907-08, 916). He further explained that he did not speak with Dr. Weiner until after forming that opinion so as to avoid "being subconsciously biased" (S.A. 801-03). See Nardi, 893 N.E.2d at 1229-30

**B.  Disclosure of the Autopsy Findings**

Petitioner asserts another Sixth Amendment violation when the superior court, over petitioner's objection, allowed Dr. McDonough to disclose factual findings from the autopsy and Dr. Weiner's opinion as to the cause of death. (See, e.g., S.A. 806, 834.) Petitioner's argument fails because (1) there is an adequate and independent state ground that bars federal habeas review; (2) it was not clearly established at the time of his prosecution and direct appeal that autopsy reports were testimonial within the purview of the Confrontation Clause; and (3) any error in permitting the brief disclosure of Dr. Weiner's opinion was harmless.

### 1. Adequate and Independent State Ground

The SJC found that petitioner did not preserve his objection to the findings and opinion in Dr. Weiner's report because he failed to make a contemporaneous objection. Nardi, 893 N.E.2d at 1234. As a general rule, this state law procedural default precludes habeas review even where, as here, the SJC nonetheless considered and rejected his unpreserved objection under the demanding "substantial likelihood of a miscarriage of justice" standard. Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010). Petitioner correctly points out that, in any specific case, "the adequacy of state procedural bars to the assertion of federal questions ... is itself a federal question." Lee v. Kemna, 534 U.S. 362, 375 (2002). He argues that he substantially complied with the rule because counsel objected in an "ample and timely manner to alert the trial court to his claim" (Pet'rs Resp. 16), and the state law default is therefore inadequate to preclude habeas relief, see Lee, 534 U.S. at 385-87 (finding a state procedural default inadequate).

6

In this case, the SJC finding of a procedural default is adequate. Counsel for petitioner made two relevant objections during Dr. McDonough's lengthy direct testimony. The first followed a question as to whether the doctor had "draw[n] certain conclusions" based on the findings in the autopsy report. (S.A. 803.) At sidebar, counsel argued that the doctor was "testifying to a written report by somebody else" and there was "no independent basis for his opinion beyond Dr. Weiner's written report." (S.A. 804.) The second objection was to Dr. McDonough's "interpretation" of language in the autopsy report. (S.A. 812.)

It is unclear, from the express language of these objections, whether they addressed only Dr. McDonough's expert opinion or were intended to have broader scope. See Nardi, 893 N.E.2d at 1234. When they are assessed in the context of the trial, it is clear that counsel did not intend to protest any mention of the findings in the autopsy report. Id. To the contrary, counsel indicated prior to trial that he would call Dr. Flomenbaum, the chief medical examiner of Massachusetts, to give an opinion as to the cause of death, testimony that would necessarily rely on findings made at the autopsy, and counsel knew that Dr. Weiner would not testify. (S.A. 274-77.) He did not move before trial to exclude the autopsy findings. Counsel referred extensively to the autopsy findings in his opening statement and stated that the medical evidence would "decide the case." (S.A. 453-57.) Significantly, counsel made no objection when Dr. McDonough disclosed Dr. Weiner's opinion as to the cause of death. (S.A. 834.)

### 2. Testimonial Hearsay Status of Autopsy Reports

7

At the time of petitioner's prosecution, and during his direct appeal, the law in the First Circuit, post-Crawford, was that autopsy reports were not testimonial and were admissible evidence under the business record hearsay exception.[4] See U.S. v. De La Cruz, 514 F.3d 121, 133 (1st Cir. 2008) (citing U.S. v. Feliz, 467 F.3d 227, 236-37 (2d Cir. 2006)). While this exception may extend only to the imprecisely defined "facts" in the autopsy report, De La Cruz, 514 F.3d at 134, and not reach any opinion as to the cause of death, the term "facts" reasonably applies to Dr. Weiner's findings as to the physical condition of the body, including bruising of the face.

Petitioner asserts that the Supreme Court held in Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527, 2536 & n.5 (2009), that autopsy reports are testimonial and thus implicate the Sixth Amendment right of confrontation defined in Crawford, but that decision issued after the SJC ruled on his case and the time to petition the Supreme Court for certiorari had lapsed. See Griffith v. Ky., 479 U.S. 314, 321 n.6 (1987) (defining finality for purposes of retroactivity of new constitutional rules). The Supreme Court's earlier holding that Crawford is not retroactive forecloses any possibility that Melendez-Diaz, "while certainly important," could have such effect. See Whorton v. Bockting, 549 U.S. 406, 416-21 (2007).

### 3. Harmless Error

The brief disclosure of Dr. Weiner's opinion was harmless error. On habeas review of a state court conviction, constitutional error is harmless unless it had a

---

[4] The SJC held that the contents of the autopsy report were testimonial hearsay, Nardi, 893 N.E.2d at 1231-32, but in this court the First Circuit's contrary holding controls.

8

"substantial and injurious effect" or influence in determining the jury's verdict. Fry v. Pliler, 551 U.S. 112, 121 (2007) (citing Brecht v. Abrahamson, 507 U.S. 619 (1993)). Dr. Weiner's conclusion as to the cause of death was disclosed, only in passing, by Dr. McDonough during his lengthy explanation of the basis for his own opinion as to the cause of death. (S.A. 834.) This disclosure, properly considered in the context of Dr. McDonough's testimony, did not have a substantial and injurious influence on the verdict.

## III. Conclusion

The petition for a writ of habeas corpus is DENIED.


    February 8, 2011　　　　　　　　　　　/s/Rya W. Zobel
        DATE　　　　　　　　　　　　　　　　RYA W. ZOBEL
                              UNITED STATES DISTRICT JUDGE